UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CONSTANCE LITTLEJOHN RIVERS,

Plaintiff,

v.

NANCY A BERRYHILL, Acting Commissioner of Social Security,

Defendant.

CASE NO. 2:17-CV-00340-RJB-DWC

REPORT AND RECOMMENDATION

Noting Date: October 6, 2017

The District Court has referred this action, filed pursuant to 42 U.S.C. § 405(g), to United States Magistrate Judge David W. Christel. Plaintiff Constance Littlejohn Rivers[1] filed this matter seeking judicial review of Defendant's denial of her applications for supplemental security income ("SSI") and disability insurance benefits ("DIB").

After considering the record, the Court concludes the Administrative Law Judge ("ALJ") erred in his assessment of Plaintiff's mental impairments at Step Two of the sequential evaluation process. Had the ALJ properly considered the evidence at Step Two, Plaintiff's

---

[1] Plaintiff filed this lawsuit as Constance Littlejohn. *See* Dkt. 1. However, in the Administrative Record and the parties' briefs Plaintiff is identified as Constance Littlejohn Rivers. *See* Dkt. 9, 11, 12, 13. The Court finds Constance Littlejohn and Constance Littlejohn Rivers are the same person and will refer to Plaintiff as Constance Littlejohn Rivers.

mental impairments may have been found to be severe and the residual functional capacity ("RFC") assessment may have included additional limitations. The ALJ's error is therefore harmful and the Court recommends this matter be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner of Social Security ("Commissioner") for further proceedings consistent with this Report and Recommendation.

## FACTUAL AND PROCEDURAL HISTORY

On November 27, 2013, Plaintiff filed applications for SSI and DIB, alleging disability as of November 1, 2008. *See* Dkt. 9, Administrative Record ("AR") 19. The application was denied upon initial administrative review and on reconsideration. AR 19. A hearing was held before ALJ M.J. Adams on May 27, 2015. *See* AR 37-75. During the hearing, Plaintiff amended her alleged onset date to November 1, 2012. AR 19. In a decision dated July 13, 2015, the ALJ determined Plaintiff to be not disabled. *See* AR 19-31. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council, making the ALJ's decision the final decision of the Commissioner. *See* AR 1-7; 20 C.F.R. § 404.981, § 416.1481.

In the Opening Brief, Plaintiff maintains the ALJ erred by failing to: (1) find Plaintiff's mental health condition severe at Step Two; and (2) consider evidence that Plaintiff must alternate between sitting and standing when assessing Plaintiff's RFC. Dkt. 11, p. 1.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

# DISCUSSION

## I. Whether the ALJ erred by finding Plaintiff's mental impairments did not constitute a severe impairment at Step Two.

Step Two of the administration's evaluation process requires the ALJ to determine whether the claimant "has a medically severe impairment or combination of impairments." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citation omitted); 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (1996). An impairment is "not severe" if it does not "significantly limit" the ability to conduct basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Regarding mental impairments, the ALJ will consider four broad functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3).[2] If the ALJ rates the degree of a claimant's limitation "in the first three functional areas as 'none' or 'mild' and 'none' in the fourth area, [the ALJ] will generally conclude that [the claimant's] impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." *Id.* at (d)(1). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality having 'no more than a minimal effect on an individual[']s ability to work.'" *Smolen*, 80 F.3d at 1290 (*quoting Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) (*adopting* Social Security Ruling "SSR" 85-28)).

---

[2] On March 27, 2017, the four areas of functioning changed to: Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. 20 C.F.R. § 404.1520a(c)(3). The Court, however, applies the regulations which were in effect on the date of the ALJ decision. *See Rose v. Berryhill*, -- F.Supp.3d --, 2017 WL 2562103, at *2 (C.D. Cal. June 13, 2017) ("the reviewing court generally applies the law in effect at the time of the ALJ's decision").

1       At Step Two, the ALJ discussed medical evidence regarding Plaintiff's mental health conditions. AR 21-23. The ALJ then found Plaintiff had mild limitations in the functional areas of activities of daily living, social functioning, and concentration, persistence, or pace, and no episodes of decompensation. AR 23-24. The ALJ determined, "[b]ecause the claimant's medically determinable mental impairments cause no more than 'mild' limitation in any of the first three functional areas and 'no' episodes of decompensation which have been of extended duration in the fourth area, they are nonsevere." AR 24.

      In asserting the ALJ erred at Step Two, Plaintiff specifically argues the ALJ erred: (1) when he found Plaintiff's mental impairments were not severe because Plaintiff failed to take medication or obtain treatment; (2) when he found Plaintiff's mental impairments were not severe because of a May 2015 treatment note; and (3) by failing to give specific and legitimate reasons for rejecting Dr. Andersen's and Dr. Wilkinson's opinions. Dkt. 11. Plaintiff contends the ALJ's errors resulted in the ALJ improperly assessing Plaintiff's four functional areas. Dkt. 13, pp. 2-4.

    A.  Failure to Treat

      First, Plaintiff asserts the ALJ erred when he found Plaintiff's mental impairments were not severe because Plaintiff failed to consistently take medication or obtain treatment. Dkt. 11, pp. 6-8. The ALJ discussed Plaintiff's mental health treatment and discounted Plaintiff's testimony regarding her mental impairments because Plaintiff failed to continue to use prescription medication that had a demonstrated benefit. AR 22.

      When a mental illness is involved, assuming that a failure to comply with prescribed treatment suggests a *willful* failure to comply with prescribed treatment can be illogical. This is, in part, because a person suffering from a mental illness may not realize she needs her

medication, or she may not realize her "condition reflects a potentially serious mental illness." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996). "'[I]t is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.'" *Id.* (*quoting* with approval, *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989)). In addition, under to Social Security Ruling ("SSR") 96-7, which was in effect at the time of the ALJ's decision, "the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment."[3]

Here, the record shows Plaintiff reported a suicide attempt in 2001, but did not get mental health treatment because she does not "really care for doctors." AR 652. She stopped using antidepressants in February of 2010 because they made her tired. AR 734. On February 4, 2014, Plaintiff reported she started on Pristique and it was helping her have less panic attacks. AR 652-53. Plaintiff also reported she tried Lexapro, which gave her more anxiety, Celexa and Effexor, which were "rotten," and Xanax, which she stated, "Knocks me on my butt." AR 653. Plaintiff reported she was off her antidepressants on April 11, 2014, AR 659, but in July of 2014 she was willing to re-try antidepressants. AR 734. In January of 2015, Plaintiff was attempting to find a psychiatrist who would accept her insurance. AR 704.

---

[3] Although "Social Security Rulings do not have the force of law, [n]evertheless, they constitute Social Security Administration interpretations of the statute it administers and of its own regulations." *See Quang Van Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989) (*citing Paxton v. Sec. HHS*, 865 F.2d 1352, 1356 (9th Cir. 1988); *Paulson v. Bowen*, 836 F.2d 1249, 1252 n.2 (9th cir. 1988)) (internal citation and footnote omitted). As stated by the Ninth Circuit, "we defer to Social Security Rulings unless they are plainly erroneous or inconsistent with the [Social Security] Act or regulations." *Id.* (*citing Chevron USA, Inc. v. NRDC, Inc.*, 467 U.S. 837, 842-45 (1984); *Paxton, supra*, 865 F.2d at 1356).

The record contains evidence Plaintiff had side effects from medication and had difficulty finding a doctor who accepted her insurance. While the evidence shows Plaintiff had less panic attacks on one medication, there is no indication her panic attacks stopped. The ALJ failed to discuss this evidence. Without adequate discussion regarding the evidence showing why Plaintiff did not seek consistent mental health treatment or consistently take medication, the Court cannot determine if the ALJ properly considered information in the case record that may explain Plaintiff's infrequent or irregular treatment. Therefore, the Court concludes the ALJ's finding that Plaintiff's mental impairments or obtain treatment are not severe because Plaintiff did not continue using prescription medication is not a specific and legitimate reason supported by substantial evidence. Accordingly, the ALJ erred.

B. Failure to Consider Treatment Note

Second, Plaintiff argues the ALJ failed to consider all portions of a May 2015 treatment record when finding Plaintiff's mental impairments were not severe. Dkt. 11, pp. 8-9.

In discussing Plaintiff's mental health treatment, the ALJ found, in relevant part,

> During a psychiatric evaluation in May 2015, the claimant demonstrated good grooming, fair eye contact, cooperative behavior, no psychomotor agitation, logical and organized thought process, fair judgment, and average intellect.

AR 22. The May 2015 psychiatric evaluation did show Plaintiff had good grooming and hygiene, maintained fair eye contact, was cooperative, was restless but had no psychomotor agitation, had linear and organized thought processes which were fairly logical, and had average intellect, fair insight, and fair judgment. AR 784-85. The treatment note also indicates Plaintiff's mood was anxious and emotional, her affect was congruent, she was unable to sit still, and her speech was slightly increased in rate, volume, and tone. AR 784. She was also moderately repetitive and talkative. AR 784.

While the ALJ accurately discussed portions of the May 2015 evaluation, he failed to discuss portions of the exam which were abnormal. For example, the ALJ failed to note Plaintiff was unable to sit still, anxious, emotional, and restless during the evaluation. *See* AR 22, 784. He also failed to mention Plaintiff's increased rate, volume, and tone of speech. *See* AR 22, 784. As the ALJ did not discuss abnormal findings in the May 2015 evaluation which show Plaintiff's mental impairments may cause functional limitations, the Court concludes the ALJ's findings regarding the May 2015 evaluation is not a valid reason for determining Plaintiff does not have a severe mental impairment. *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) ("an ALJ must consider all relevant evidence in the record, including . . . medical records, lay evidence, and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment" (internal citation omitted); *Hutchinson v. Colvin*, 2016 WL 6871887, *4 (W.D. Wash., Nov. 22, 2016, J. Creatura) (noting the ALJ's treatment of the evidence of record at Step Two suggested improper "cherry-picking" to support the ALJ's decision "while failing to address aspects of the record supporting a finding of severe limitations"). Therefore, the ALJ erred.

### C. Failure to Properly Consider Medical Opinions

Third, Plaintiff maintains the ALJ erred in his consideration of the opinions of examining psychiatrist Dr. Kathleen Andersen, M.D. and examining psychologist Dr. William Wilkinson, Ed.D. Dkt. 11, pp. 9-13.

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (*citing Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). When a treating or examining physician's opinion is contradicted, the

opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31 (*citing Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (*citing Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

1. *Dr. Andersen*

Dr. Andersen completed a Psychiatric Report on February 4, 2014. AR 651-56. Dr. Andersen diagnosed Plaintiff with Major Depressive Disorder, Generalized Anxiety Disorder, and Panic Disorder. AR 655. She opined:

> It would be difficult to picture [Plaintiff] finding and maintaining employment. She says that she spends most of her waking hours laying down. Otherwise, her pain becomes more severe. In a work situation, her high level of anxiety, emotional lability, agitation would interfere with her being able to focus on tasks and complete tasks in a timely fashion. She would likely handle stress in the workplace poorly, becoming more agitated, tearful. She appears to be trying to interact pleasantly and cooperatively, however, her level of agitation and emotional lability would make interacting consistently and appropriately with others in the workplace extremely difficult. There would likely be absenteeism related to her pain problems. Additionally, she might benefit from therapy aimed at helping her learn relaxation techniques and supporting her in learning how to best deal with her anxiety about the future. However, she does not appear to be interested in this, and so, her prognosis overall for significant improvement is likely quite guarded. She does appear to be capable of managing her own funds.

AR 656. The ALJ discussed Dr. Andersen's findings and stated,

> I give minimal weight to Dr. Andersen's assessment. (1) She based her assessment on a singular presentation and (2) heavily relied upon the claimant's subjective reporting of pain symptoms and panic attacks. As discussed later in this decision, I find that the claimant is not credible in regards to the debilitating severity of her pain symptoms. Her lack of persistence with beneficial psychiatric medication is also inconsistent with panic attacks or emotional lability causing functional limitations. (3) Dr. Andersen's assessment is otherwise inconsistent with the claimant's activities and function report following her amended alleged onset date, which are summarized later in this decision (in regards to the "paragraph B" criteria).

AR 22-23 (internal citations omitted, numbering added).[4]

First, the ALJ gave minimal weight to Dr. Andersen's opinion because it was based on a singular presentation. AR 22. An examining doctor, by definition, does not have a treating relationship with a claimant and usually only examines the claimant one time. *See* 20 C.F.R. § 404.1527. "When considering an examining physician's opinion . . . it is the quality, not the quantity of the examination that is important. Discrediting an opinion because the examining doctor only saw claimant one time would effectively discredit most, if not all, examining doctor opinions." *Yeakey v. Colvin*, 2014 WL 3767410, at *6 (W.D. Wash. July 31, 2014). Accordingly, the Court finds this is not a specific and legitimate reason for rejecting Dr. Andersen's opinion.

Second, the ALJ found Dr. Andersen's opinion was entitled to minimal weight because it was heavily based on Plaintiff's subjective reports of pain and panic attacks. AR 22-23. An ALJ may reject a physician's opinion "if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (quoting *Morgan v. Comm'r. Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999)). This situation is distinguishable from one in which the doctor provides his own observations in support of his assessments and opinions. *See Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008). "[W]hen an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion."

---

[4] Defendant argues the ALJ discounted Dr. Andersen's opinion because Plaintiff lacked persistent treatment. Dkt. 12, p. 9. The Court finds the ALJ provided this reason as support for his conclusion that Plaintiff's self-reports to Dr. Andersen regarding her panic attacks lacked credibility as they were not consistent with the record. AR 23. Therefore, the Court does not find the ALJ discounted Dr. Andersen's opinion because Plaintiff lacked persistent treatment. Regardless, the record does not support finding Plaintiff's lack of treatment is sufficient to show Plaintiff lacks credibility regarding her mental health impairments. *See* Section I, A, *supra*. The ALJ also failed to adequately explain how Dr. Andersen's opinion is inconsistent with Plaintiff's lack of treatment. AR 22-23. In any event , Dr. Andersen accounted for Plaintiff's medication use, or lack thereof, in reaching her opinion. *See* AR 655-56.

*Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (citing Ryan, 528 F.3d at 1199-1200). Notably, a psychiatrist's clinical interview and mental status evaluation are "objective measures" which "cannot be discounted as a self-report." *See Buck v. Berryhill*, -- F.3d ---, 2017 WL 3862450, at *6 (9th Cir. Sept. 5, 2017).

In reaching her opinion, Dr. Andersen reviewed limited medical records, observed Plaintiff, and conducted a clinical interview and mental status examination. *See* AR 651-56. Dr. Andersen did not discredit Plaintiff's subjective reports, and supported her ultimate opinions with objective testing, personal observations, and a clinical interview. The Court finds Dr. Andersen's opinion was not more heavily based on Plaintiff's subjective complaints and self-reports. Therefore, this is not a specific and legitimate reason supported by substantial evidence for giving minimal weight to Dr. Andersen's opinion.

Third, the ALJ determined Dr. Andersen's opinion was entitled to minimal weight because her assessment was inconsistent with the claimant's activities and function report following her amended alleged onset date. AR 23. The ALJ did not explain how Plaintiff's activities were inconsistent with Dr. Andersen's opinion. *See* AR 23. Further, when discussing Dr. Andersen's opinion, the ALJ did not identify what activities he found were inconsistent with the opinion. While the ALJ references his discussion of the Paragraph B criteria to support this reason, the ALJ fails to state what activities in that discussion are inconsistent with Dr. Andersen's opinion. *See* AR 23-24. Without an explanation regarding what portions of Dr. Andersen's opinion are inconsistent with Plaintiff's activities and how the activities are inconsistent with the opinion, the Court finds this is not a valid reason for discounting Dr. Andersen's opinion. *See Popa v. Berryhill*, -- F.3d --, 2017 WL 3567827, at *4 (9th Cir. Aug. 18, 2017) (finding the ALJ erred when he failed to explain why the claimant's daily activities were

inconsistent with the doctor's opinion); *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) ("the agency [must] set forth the reasoning behind its decisions in a way that allows for meaningful review"); *Embrey*, 849 F.2d at 421-22 ("it is incumbent on the ALJ to provide detailed, reasoned, and legitimate rationales for disregarding the physicians' findings[;]" conclusory reasons do "not achieve the level of specificity" required to justify an ALJ's rejection of an opinion).

For the above stated reasons, the Court finds the ALJ did not provide specific and legitimate reasons supported by substantial evidence for giving minimal weight to Dr. Andersen's opinion. Therefore, the ALJ erred.

2. *Dr. Wilkinson*

Dr. Wilkinson completed a Psychological/Psychiatric Evaluation on December 4, 2014. AR 673-80. Dr. Wilkinson diagnosed Plaintiff with Major Recurrent Depression, no psychotic features, and Anxiety. AR 675. He opined Plaintiff had moderate limitations in understanding, remembering, and persisting in tasks by following detailed instructions, learning new tasks, performing routine tasks without special supervision, adapting to changes in a routine work setting, being aware of normal hazards and taking appropriate precautions, and communicating and performing effectively in a work setting. AR 675-76. Dr. Wilkinson found Plaintiff had marked limitations in maintaining appropriate behavior in a work setting, marked to severe limitations in performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances without special supervision, and severe limitations in completing a normal work day and work week without interruptions from psychologically based symptoms. AR 675-76.

The ALJ discussed Dr. Wilkinson's opinion regarding Plaintiff's functional limitations. AR 23. He then stated,

> I give minimal weight to Dr. Wilkinson's opinions. (1) He gave no expressed basis for his multifaceted assessment. (2) His opinions are inconsistent with the claimant's longitudinal examination findings and activities since November 2012, which are summarized in the following discussion of the "paragraph B" criteria.

AR 23.

First, the ALJ gave minimal weight to Dr. Wilkinson's opinion because he gave no basis for his multifaceted assessment. AR 23. This reason is conclusory. The ALJ provided no explanation why Dr. Wilkinson's opinion should be entitled to less weight because the portion of his evaluation that includes the opined functional limitations does not include written explanations supporting his opinion. Furthermore, simply because Dr. Wilkinson's opinion as to Plaintiff's functional limitations was on a "check-box" form does not mean the assessment was not supported. Rather, Dr. Wilkinson's opinion was based on objective findings. Dr. Wilkinson conducted a clinical interview and a mental status examination of Plaintiff, and noted his observations of Plaintiff. *See* AR 673-80. As Dr. Wilkinson's findings were based on his examination of Plaintiff, the Court finds the ALJ's first reason for giving minimal weight to Dr. Wilkinson's opinion is not specific and legitimate and supported by substantial evidence. *See Trevizo v. Berryhill*, 862 F.3d 987, 999, n. 4 (9th Cir. 2017) ("there is no authority that a 'check-the-box' form is any less reliable than any other type of form; indeed, agency physicians routinely use these types of forms to assess the intensity, persistence, or limiting effects of impairments").

Second, the ALJ determined Dr. Wilkinson's opinion was entitled to minimal weight because the opinion is inconsistent with Plaintiff's longitudinal examination findings and activities since November 2012. AR 23. The ALJ, however, fails to explain how the longitudinal

examination findings and Plaintiff's activities are inconsistent with Dr. Wilkinson's opinion. Again, as the ALJ did with Dr. Anderson, the ALJ makes a general reference to his Paragraph B discussion in an attempt to explain what activities are inconsistent with Dr. Wilkinson's opinion, but fails to state which of those activities are inconsistent with the opinion. *See* AR 23. Without an explanation regarding how Dr. Wilkinson's opinion is inconsistent with the longitudinal examination findings and Plaintiff's activities, the Court finds this is not a sufficiently specific reason for discounting Dr. Wilkinson's opinion. *See Popa*, -- F.3d --, 2017 WL 3567827, at *4; *Brown-Hunter*, 806 F.3d at 492; *Embrey*, 849 F.2d at 421-22; *Dean v. Colvin*, 2015 WL 6158874, at *11 (W.D. Wash. Sept. 29, 2015) (finding the ALJ's reasoning was not sufficiently specific when the ALJ fails to adequately explain *how* the doctor's opinions were inconsistent with the longitudinal record).

    The Court finds neither reason provided by the ALJ for giving minimal weight to Dr. Wilkinson's opinion is specific and legitimate and supported by substantial evidence. Therefore, the ALJ erred.

    D.  <u>Harmful Error</u>

    For the above stated reasons, the Court finds the ALJ erred in finding Plaintiff did not have a severe mental impairment at Step Two. Harmless error principles apply in the Social Security context. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless, however, only if it is not prejudicial to the claimant or "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v. Commissioner, Social Security Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see Molina*, 674 F.3d at 1115. The determination as to whether an error is harmless requires a "case-specific application of judgment" by the reviewing court, based on an examination of the record made "'without regard to errors' that do not affect the parties'

'substantial rights.'" *Molina*, 674 F.3d at 1118-1119 (*quoting Shinseki v. Sanders*, 556 U.S. 396, 407 (2009) (quoting 28 U.S.C. § 2111)). If the ALJ accounts for all Plaintiff's limitations in assessing the RFC, the Step Two error is harmless. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

The Court finds the ALJ's errors are harmful because he failed to properly consider: (1) the four broad functional areas at Step Two; and (2) Plaintiff's mental impairments throughout the remaining steps of the sequential evaluation process.

First, because the ALJ erred in considering the medical evidence prior to analyzing the four broad functional areas at Step Two, he failed to properly determine if Plaintiff had more than mild limitations in activities of daily living, social functioning, and concentration, persistence, or pace. *See* AR 21-24. The ALJ relied on his incorrect assessment of the evidence when finding Plaintiff had only mild limitations in the first three functional areas. Had the ALJ properly considered Plaintiff's subjective complaints, the treatment records, and the medical opinion evidence, the ALJ may have found Plaintiff had more than mild limitations in these functional areas and found Plaintiff's mental impairments are severe at Step Two.[5]

Second, the ALJ failed to consider Plaintiff's mental impairments throughout the remaining steps of the sequential evaluation process. The ALJ made one reference to Plaintiff's psychological complaints when determining Plaintiff's RFC. AR 29. However, he discounted the evidence with the same reasons he provided at Step Two, which this Court has determined was error. *See* AR 29. The ALJ also did not include any mental limitations in the RFC or the hypothetical question posed to the vocational expert, Mark Allen Harrington. *See* AR 25, 62-63. If the ALJ had properly considered the medical evidence and found Plaintiff's mental

---

[5] The Court also notes the functional areas have changed and the evidence may show Plaintiff is more than mildly limited in the new functional areas. *See* 20 C.F.R. § 404.1520a(c)(3).

impairments severe, the RFC may have included non-exertional limitations such as: difficulty interacting consistently and appropriately with others in the workplace and absenteeism.

For the above two reasons, the ALJ's failure to properly consider Plaintiff's mental impairments at Step Two and throughout the remaining sequential evaluation process impacts the ultimate disability decision. Therefore, the ALJ's error at Step Two is harmful and requires remand.

The Court also notes new evidence was submitted to the Appeals Council and included in the record. *See* AR 5-6. This evidence was not considered by the ALJ. *See* AR 32-36. On remand, the Court recommends the ALJ be directed to consider the new evidence that was submitted to the Appeals Council when determining if Plaintiff's mental impairments are severe.

**II.     Whether the ALJ erred in assessing Plaintiff's RFC.**

Plaintiff argues the ALJ failed to properly consider Plaintiff's RFC when he found Plaintiff could stand for prolonged periods without considering medical evidence showing Plaintiff must alternate between sitting and standing. Dkt. 11, pp. 13-15. The ALJ's error at Step Two requires remand to the Commissioner for proper consideration of Plaintiff's severe impairments and to reconsider each of the remaining steps in the administrative process in light of Plaintiff's impairments and the new evidence submitted to the Appeals Council. As the ALJ's error at Step Two impacts all aspects of the ALJ's decision, the Court recommends the ALJ be instructed to re-evaluate this entire matter on remand. Specifically, the Court recommends the ALJ be directed to re-evaluate the medical evidence showing Plaintiff must alternate between sitting and standing and determine if this limitation should be included in the RFC.

## CONCLUSION

Based on the above stated reasons, the undersigned recommends this matter be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner for further proceedings consistent with this Report and Recommendation. The undersigned also recommends judgment be entered for Plaintiff and the case be closed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on October 6, 2017, as noted in the caption.

Dated this 15th day of September, 2017.

David W. Christel
United States Magistrate Judge